Laily Boutaleb
LBE Law Firm
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Tel: 424) 523-2594
Fax: 310) 943-2232
laily@Lbelawfirm.com

**THE UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF COLUMBIA**

GHOLAMREZA MOHAMMADI
North Alame, 16th West Avenue, No. 8
Saadat Abad, Tehran, Iran 1997987122

Plaintiff,

vs.

UNITED STATES DEPARTMENT OF STATE, 1600 Pennsylvania Avenue NW, Washington, DC 20500;

ANTONY J. BLINKEN, Secretary of State, in his official capacity; 1600 Pennsylvania Avenue NW, Washington, DC 20500

RENA BITTER, Assistant Secretary of Consular Affairs, in her official capacity; JULIE M. STUFFT, Deputy Assistant Secretary for Visa Services, in her official capacity; Bureau of Consular Affairs, U.S. Department of State, 600 19th Street, NW Washington, DC 20036;

SEAN MURPHY, Chargé d'Affaires for the United States Embassy Abu Dhabi, United Arab Emirates, in his official capacity; Embassy of the United States of America, Airport Road Embassies District, Sector - Plot 38 29th St - Al Rawdah - W59-02 - Abu Dhabi - United Arab Emirates.

ALEJANDRO MAYORKAS, Secretary of the U.S. Department of Homeland Security, in his official capacity; Alejandro Mayorkas,

Case No.: 1:23-cv-1846

**PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Secretary of Homeland Security, Washington, DC 20528

Defendants.

## PREFATORY STATEMENT

1. This is an action to compel Defendants to adjudicate Plaintiff Gholamreza Mohammadi's immigrant visa application, which has been pending at the U.S. Embassy in Abu Dhabi, United Arab Emirates (hereinafter "Embassy") for nearly seven years, since October 2016. Plaintiff Mohammadi is the beneficiary and self-petitioner for an Extraordinary Ability E-11 Category Immigrant Visa (hereinafter after "E-11"), whose petition was approved by U.S. Citizenship and Immigration Services ("USCIS") and thereafter sent to the Embassy for consular processing.

2. Plaintiff, his spouse, and their children have a dream of continuing his success as an acclaimed international wrestling coach in the United States and for the children to continue their education.

3. Plaintiff and his family attended an immigrant visa interview together on October 30, 2016 (prior to the COVID-19 pandemic) with the hopes of an immigrant visa issuance.

4. They were given a 221(g) refusal sheet for administrative processing and requesting Medical Examination.

5. The Medical Examinations requested were completed and given to the Embassy shortly after the interview by Plaintiff, as requested.

6. To date, Plaintiff and his family's immigrant visa applications remain in "administrative processing."

7. Congress has directed the Department of State to decide such applications within 30 days.

8. Despite numerous inquiries, the Embassy has failed to act on the application. As such, Plaintiff seeks an order from this Court compelling Defendants to adjudicate his Immigrant Visa application.

## JURISDICTION

9. This Court has jurisdiction to hear this case under 28 U.S.C. § 1361, The Mandamus Act, and 28 U.S.C. § 1331, Federal Question Jurisdiction.

10. The Court may grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202, 5 U.S.C. § 702, and 28 U.S.C. § 1361.

11. Defendants have waived their sovereign immunity under 5 U.S.C. § 702.

## VENUE

12. Venue is proper in the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e)(1)(C) because this is a civil action against officers and agencies of the United States in their official capacities; brought in the district where defendants reside because both Defendants, Department of State and Department of Homeland Security, are headquartered in the District of Columbia.

## PARTIES

13. Plaintiff Gholamreza Mohammadi is a citizen of Iran and a well renowned wrestling coach and the beneficiary of an immigrant visa petition (Form I-140) under E-11 Category also known as EB-1, which was approved by USCIS on January 7, 2016.

14. Plaintiff has filed an immigrant visa application that has been pending at the Embassy since October 2016.

15. Defendant ANTONY J. BLINKEN is the U.S. Secretary of State. He is sued in his

official capacity, as he is charged with all responsibilities relating to visas, the administration of visa-related laws, and consular visa processing, including the U.S. Embassy in Abu Dhabi where Plaintiff's application is pending.

16. Defendant RENA BITTER is the Assistant Secretary for Consular Affairs for the U.S. Department of State. She is sued in her official capacity, as she is charged with oversight of all consular – including immigrant visa – matters.

17. Defendant JULIE M. STUFFT is the Deputy Assistant Secretary for Visa Services at the U.S. Department of State. She is sued in her official capacity, as she is charged with all matters relating to visas and the administration of visa-related laws.

18. Defendant SEAN MURPHY is Chargé d'Affaires at the United States Embassy Abu Dhabi, the United Arab Emirates. He is sued in his official capacity, as he is responsible for oversight of all consular activities of the Embassy in Abu Dhabi, United Arab Emirates.

19. Defendant ALEJANDRO MAYORKAS is the Secretary of the U.S. Department of Homeland Security ("DHS"). He is sued in his official capacity, as he is delegated authority over, *inter alia,* (1) the granting or refusals of visa applications, including coordinating the timely completion of background checks with the Federal Bureau of Investigation and (2) administering and enforcing immigration laws. 6 U.S.C. § 236(b).

## OVERVIEW OF THE LAW

20. The E-11 category is an employment-based petition.

21. An individual may be eligible for an employment-based first-preference visa. 8. U.S.C. § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h).

22. Eligibility for Extraordinary Ability Classification requires demonstration of

extraordinary ability in the sciences, arts, education, business, or athletics, through sustained national or international acclaim, and achievements that have been recognized in the field through extensive documentation. 8. U.S.C. § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h)(3).

23. A noncitizen, or any person on their behalf, may file an I–140 petition for immigration visa classification under 8. U.S.C. §1153(b)(1)(A) of as a person of extraordinary ability in the sciences, arts, education, business, or athletics. 8 C.F.R. § 204.5(h).

24. Extraordinary ability means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor. 8 C.F.R. 204.5(h)(2).

25. A petition filed on behalf of a person with extraordinary ability does not need to be supported by a job offer; therefore, anyone can file the petition on behalf of the person, including the noncitizen who may file as a self-petitioner. *See* 8 C.F.R. 204.5(h)(5). *See* 8 C.F.R. 204.5(h)(1) (providing that "[a]n alien, or any person on behalf of the alien," may file the petition).] The person must still demonstrate, however, that he or she intends to continue work in the area of his or her extraordinary ability and that his or her work will substantially benefit the United States in the future. *See* 8. U.S.C. § 1153(b)(1)(A)(ii) and 8. U.S.C. § 1153(b)(1)(A)(iii)

26. Once USCIS makes an adjudication and if the petition is approved, the file is then sent to the National Visa Center (hereafter "NVC"), a component agency within USCIS.

27. Thereafter, if the beneficiary is abroad, they file Form DS-260 (for each family member), which is an immigrant visa application, pay a $325 fee per submitted form, and submit supporting documentation.

28. Once NVC determines that the application is complete, it is placed in a queue to schedule

an interview at the U.S. Embassy or Consulate abroad.

29. Following the immigrant visa interview with a consular officer, the visa applicant is either granted or refused an immigrant visa.

30. One of the refusal grounds is under Section 221(g) of the Immigration and Nationality Act (INA) (hereinafter "§ 221(g) refusal"), 22 C.F.R. § 42.81(a) and 8 U.S.C. § 1201 which is used, inter alia, when a refusal is predicated on Administrative Processing.

31. A § 221(g) refusal indicates that the applicant did not establish eligibility for a visa to the satisfaction of the consular officer. U.S. Department of State, Administrative Processing Information, available at: https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html.

32. A consular officer may determine that further information is needed from sources other than the applicant to establish visa eligibility. Then temporarily the visa application will be refused warranting further administrative processing. Once administrative processing is complete the consular officer will determine eligibility for granting or denying the visa. The consular officer will inform the applicant at the conclusion of the interview if their case requires administrative processing. *Id.*

33. Once additional documents requested are submitted or upon resolution of administrative processing, the consular officer can reconsider the visa application originally refused under 221(g) and determine applicant's eligibility. *Id.*

34. When the consular officer provides a 221(g) notice to the applicant they will advise if further documentation or information is needed from them or if the case requires further administrative processing. *Id.*

**FACTUAL AND PROCEDURAL HISTORY**

35. Plaintiff is a renowned international wrestling national team coach, who resides in and is a citizen of Iran.

36. Plaintiff is a former Olympic wrestler and a well-recognized wrestling coach, who has had numerous international and national rankings and has led and trained top national team athletes to the highest ranks including the world championships.

37. Plaintiff has had many articles written about him and his work. For example, there were Articles written about him in *BBC News*, *Tehran Times*, *Olympic Newsletter*, *Inside the Games*, etc.

38. In addition, he has numerous certificates of appreciation for his contributions to the success of many world, Olympic, and World championships.

39. Plaintiff continues his work as a successful experienced wrestling coach preparing athletes for various national and international competitions.

40. Plaintiff is pursuing an immigrant visa to allow him and his family to live and work in the United States. He already has contacts in the U.S. that are looking for his expertise and for the longest time he has been planning on starting his own training facility, which has been pushed back year after year and all his career goals in the U.S. have been put on pause.

41. It remains Plaintiff and his family's dream to begin their new life in the U.S. with high hopes for the Plaintiff's continued success and the children's educational opportunities that have been paused for almost the past seven years.

42. On or around October 2, 2015, Plaintiff filed an I-140 E-11 Petition on behalf of himself, pursuant to 8 U.S.C. § 1153(b)(1)(A).

43. USCIS approved the I-140 Petition on or about January 7, 2016, and forwarded, through NVC, to the U.S. Embassy in Abu Dhabi, United Arab Emirates for further processing and scheduling of an immigrant visa interview.

44. On October 30, 2016, Plaintiff and his family appeared at the Embassy for their immigrant visa interview. At the conclusion of the interview, Plaintiff and family were given a §221(g) refusal for administrative processing.

45. The refusal was based on the consular officer's conclusion that further administrative processing was necessary and Medical Examinations to be submitted.

46. The Medical Examinations were completed and given to the Embassy shortly thereafter.

47. At the end of the interview, they were given an Embassy sheet indicating that their visa was refused under Section 221(g) of the Immigration and Nationality Act pending completion of further Administrative Processing and requesting Medical Examination.

48. The letter stated that "*Your visa application is temporarily refused under section 221(g) of the US Immigration and Nationality Act for the reason stated below. However, this refusal may be overcome once the missing documentation and/or administrative processing have been met*."

49. Medical Examinations were completed and dropped off shortly thereafter, leaving the Administrative Processing to be completed.

50. Since approximately October 30, 2016, Plaintiff, through his counsel, has been in continuous contact with the Embassy.

51. It has been almost seven years that the Plaintiff and his family have been pending the completion of Administrative Processing.

52. During these nearly seven years, Plaintiff, through his counsel, has been in communication with the Embassy and provided all requested documents.

53. Additionally, Plaintiff has been checking the status of his visa application on the Consular Electronic Application Center (CEAC), which reflects the same "*...If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is needed.*

54. Counsel has sent at least eight (8) follow up and status emails to the Embassy after the resumption of visa processing per the *Presidential Proclamation on Ending Discriminatory Bans on Entry to the United States* which required "resumption of visa processing and expeditious processing of pending visa applications". These emails were sent every few months, including January 2021, August 2021, September 2021, April 2022, May 2022, November 2022, May 2023.

55. In particular, on August 2021and September 2021 DS-260 and thereafter November 2022 the requested DS 5535 forms were submitted and resubmitted per Embassy instructions.

56. The DS 260 forms were resubmitted by Plaintiff on or about August 2021 for the second time per Counsel's suggestion (as Embassy never notified of reopening of the DS 260 applications at that time).

57. Embassy in reply to an April 27, 2022, inquiry replied May 9, 2022 advising that "*this case been going on for a long time and all the documents have expired. Unfortunately, the process and procedures have changed.* […] You will need to upload a new DS 260 and come in

for the oath. *The first step is to fill out the DS 5535 in detail and submit online. Once the DS 535 [5535] is cleared, you will need current petition, police certificate, current medical certificate, and any other current documents that have expired*."

58. On May 26th, 2022, counsel emailed the Embassy "*1-Would the same Word version of DS-5355 (used in the past with this post) emailed to embassy suffice as "online submission"? Kidney advise if there is a new procedure. 2-Do you require DS-5355 from the children beneficiaries? 3-All DS forms were renewed and submitted in the past few months, but we can certainly resubmit on ceac. 4-Kindly advise other documents specifically you may need to be uploaded again ("expired") to speed up the process, as this case has been pending for almost 6 years with ongoing contacts maintained with post to ensure case remains open."*

59. An automatic reply was received the same day and no reply was ever communicated in response by the Embassy.

60. On November 9, 2022, DS5535 was submitted in the body of the email (as was the standard of practice and guidance in the past with the Embassy).

61. On November 13, 2022, the Embassy requested the DS5535 to be submitted again in Word document format only.

62. On November 16, 2022, Counsel resent the DS5535 using the Word format per Embassy's request.

63. On November 17, 2022, Embassy requested for the form to be submitted using a link they provided. It should be noted this link was never provided in their original request or responded to in any of Counsel's follow ups or submissions. Standard practice with this post was not a link in the past.

64. On November 25, 2022, DS 5535 forms were submitted again (after at least three submissions totaling 12 DS5535 submissions for Plaintiff and family) as Embassy requested them in yet another format.

65. After the DS 5535 submissions no further information was requested and the CEAC immigrant visa status check website has not changed to reflect any other updates to date.

66. After the DS 5535 submissions Embassy never cleared the DS 5535 for further requested steps to begin as advised by their communication.

67. On May 2, 2023, counsel followed up on the applicant's case again to ensure the submitted DS 5535s were cleared.

68. Embassy replied on or about May 10, 2023, requesting DS 5535 yet again and noting "This case is now updated and will not go into Term I status."

69. Counsel notified the embassy that the DS 5535 was in fact submitted and the last of numerous submissions was on November 25, 2022. Counsel immediately brought this up to the Embassy's attention and noted that this was "unacceptable", and the automatic replies confirmed receipt by the Embassy. Counsel further requested explanation of why this case would even go to "Term I" status given the continuous communications throughout the years.

70. Termination I status is defined as Applicant's failure to follow up or respond to requests within one year or pursue their immigrant visa 22 C.F.R § 42.83.

71. The regulations state "*If, after one year, the applicant … has failed to present evidence to overcome an INA 221(g) refusal requesting evidence from the applicant, post will use the features of IVIS to run the 'Report of Cases Subject to Possible Termination' and must send the automatically generated Notice of Termination of Registration letter (also known as the*

*Termination 1 letter) to all inactive cases on that report*." Termination of Immigrant Visa Registration, 9 FAM 504.13, available at https://fam.state.gov/fam/09FAM/09FAM050413.html. Such Termination was never communicated to Plaintiff or Counsel and as stated would be premature as Plaintiff has remained in contact and provided all requested documentation multiple times.

72. Counsel completed updated DS 260 forms again for at least the third time with Plaintiff, and they were submitted on or about May 2023.

73. This was done as Counsel felt the need to check Plaintiff's CEAC page as the Embassy was not responsive with any guidance in regards to Plaintiff's current status and not having received the Embassy said clearance of the DS5535 form.

74. Embassy to date has not emailed a response.

75. Embassy never notified Plaintiff nor counsel of the need for resubmission of the DS 260 forms (as they had advised for the DS5535 needed to be cleared as the first step).

76. Plaintiff's visa application remains undecided and has been stuck in what seems to be the limbo of "administrative processing" for almost seven years, despite Plaintiff's full cooperation and frequent efforts to resolve the delay.

77. As a result of this delay, Plaintiff has been unable to pursue his career plans and goals in the United States and cannot fully attend to his career and life in his home country as he has no idea if or when he will be able to relocate to the United States.

78. Plaintiff is further limited in traveling to the United States, and pursing his coaching activities, as he now has a pending immigrant visa case and holds an immigrant intent. This immigrant intent prohibits him from showing a non-immigrant intent, which is required for

issuance of almost all non-immigrant visas/status and entry to the United States. 9 FAM 403.10 and 9 FAM 401. This has damaged and caused harm to him professionally and inhibited his professional plans and growth and has paused his long-term career goals and plans in the United States.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION:**

**(Violation of the Mandamus Act, 28 U.S.C. § 1361)**

79. Plaintiff re-alleges and incorporates by reference, as is fully set forth herein, the allegations contained in paragraphs above.

80. Mandamus is available to compel a federal official or agency to perform a duty if: (1) there is a clear right to the relief requested; (2) defendant has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available. See 28 U.S.C. § 1361.

81. Plaintiff has a clear right to the relief sought.

82. Plaintiff has met the requirements for a visa under E-11 category as a person of Extraordinary Ability and USCIS approved his I-140 petition on that basis.

83. Defendants have a non-discretionary duty to reconsider the initial visa refusal. 22 C.F.R. § 42.81(e); *Rivas v. Napolitano*, 714 F.3d 1108 (9th Cir. 2013).

84. Defendants have failed to fulfill their non-discretionary duty to complete administrative processing and make a final determination on Plaintiff's immigrant visa issuance within a reasonable time.

85. Federal agencies, including Defendant Embassy, are required to conclude matters presented to them within a "reasonable time." 5 U.S.C. § 555(b).

**86.** Plaintiff has brought this action because he has no other means to compel Defendants to perform the nondiscretionary duty that Defendants owe Plaintiff.

**SECOND CAUSE OF ACTION:**

**(Violation of the APA, 5 U.S.C. §§ 553(b) and 701)**

87. Plaintiff realleges and incorporates by reference, as is fully set forth herein, the foregoing paragraphs.

88. The Administrative Procedure Act obligates Defendants to "proceed to conclude a matter presented to it" within a "reasonable time," 5 U.S.C. § 555(b), and provides that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).

89. Defendants have a non-discretionary duty to adjudicate immigrant visa issuance or refusal thereof pursuant to Federal regulations at 22 C.F.R. § 42.8(a) which states that the consular officer must either issue or refuse the visa.

90. Defendants have failed to fulfill their non-discretionary duty to adjudicate or refuse Plaintiff's visa within a reasonable time.

91. Considering relevant factors such as Congress' intent to set aside a category of immigrant visas to bring individuals of extraordinary ability for the prospective benefit to the U.S. (reserving this benefit for those that fall within one of the small percentage who have risen to the very top of their field of endeavor and allow them to self-petition for an immigrant visa benefit), the scope and extent of the interests harmed by Defendants' delay, Defendants' delay is unreasonable in this case. *See Telecommunications Research & Action Center v. Fed. Communications Comm.*, 750 F.2d 70, 80 (D.C. Cir. 1984). Nor would granting relief cause Plaintiff to jump a queue of similarly situated petitioners.

92. Defendants' failure to complete administrative processing of Plaintiff's immigrant visa application in almost seven years constitutes an agency action unlawfully withheld or unreasonably delayed in violation of 5 U.S.C. § 706(1).

**PRAYER**

Plaintiff prays for judgment against Defendants and respectfully requests that the Court:

A. Assume jurisdiction over this matter;

B. Order Defendants and those acting under them to complete administrative processing and issue a final decision on Plaintiff's immigrant visa application without further delay;

C. Issue a writ of mandamus directing Defendants to complete administrative processing and issue a final decision on Plaintiff's visa without further delay;

D. Retain jurisdiction over this matter and any attendant proceedings until Defendants have issued a final decision in this matter and communicated that decision to Plaintiff;

E. Grant reasonable attorney's fees and costs of court under the Equal Access to Justice Act ("EAJA");

F. Grant such other relief at law and in equity and justice may require.

Respectfully submitted on this 24th day of June 2023,

______________________